**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Atdom Mikels Patsalis,

       Petitioner,

v.

Attorney General of the State of Arizona, et al.,

       Respondents.

No. CV-18-08101-PCT-JAT

**ORDER**

Pending before the Court is Petitioner's Petition for Writ of Habeas Corpus. The Magistrate Judge to whom this case was assigned has issued a Report and Recommendation (R&R) recommending that the Petition be granted and that Petitioner be returned to state court for resentencing before a different judge. (Doc. 32 at 27). In summary, the basis for this recommendation is the Magistrate Judge's conclusion that Petitioner's sentences violate the Eighth Amendment's Cruel and Unusual Punishment Clause. Although not expressly stated in the R&R, implicit in the recommendation that Petitioner be returned to state court for resentencing is a mandate that the new judge must give a lower sentence to not run afoul of the Constitution. Respondents have objected to the R&R. (Doc. 35). Petitioner, through counsel, has responded to the objection. (Doc. 36).

## I.    Review of R&R

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). It is "clear that the district judge must review the magistrate judge's findings and recommendations de

1   novo *if objection is made*, but not otherwise."  *United States v. Reyna-Tapia*, 328 F.3d

2   1114, 1121 (9th Cir. 2003) (en banc) (emphasis in original); *Schmidt v. Johnstone*, 263 F.

3   Supp. 2d 1219, 1226 (D. Ariz. 2003) ("Following *Reyna-Tapia*, this Court concludes that

4   de novo review of factual and legal issues is required if objections are made, 'but not

5   otherwise.'"); *see also Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*,

6   589 F.3d 1027, 1032 (9th Cir. 2009) (stating that the district court "must review de novo

7   the portions of the [magistrate judge's] recommendations to which the parties object").

8   District courts are not required to conduct "any review at all . . . of any issue that is not the

9   subject of an objection."  *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *see also* 28 U.S.C. §

10   636(b)(1) ("[T]he court shall make a de novo determination of those portions of the [report

11   and recommendation] to which objection is made.").

## II.    Review of State Court Decision

13       The Petition in this case was filed under 28 U.S.C. § 2254 because Petitioner is

14   incarcerated based on a state conviction.  With respect to any claims that Petitioner

15   exhausted before the state courts, under 28 U.S.C. § 2254(d)(1) and (2) this Court must

16   deny the Petition on those claims unless "a state court decision is contrary to, or involved

17   an unreasonable application of, clearly established Federal law" or was based on an

18   unreasonable determination of the facts.  *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

19   Further, this Court must presume the correctness of the state court's factual findings

20   regarding a petitioner's claims. 28 U.S.C. § 2254(e)(1).  Additionally, "[a]n application for

21   a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the

22   applicant to exhaust the remedies available in the courts of the State."  28 U.S.C.

23   § 2254(b)(2).

24           To determine whether a state court ruling was "contrary to" or
25       involved an "unreasonable application" of federal law, courts look
         exclusively to the holdings of the Supreme Court that existed at the time of
26       the state court's decision. *Greene v. Fisher*, 565 U.S. 34, 38, 132 S.Ct. 38,
         181 L.Ed.2d 336 (2011). A state court's decision is "contrary to" federal law
27       if it applies a rule of law "that contradicts the governing law set forth in
28       [Supreme Court] cases or if it confronts a set of facts that are materially

indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v. Esparza*, 540 U.S. 12, 14, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003) (citations omitted). A state court decision is an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular case. *Brown v. Payton*, 544 U.S. 133, 141, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree on the correctness of the state court's decision.'" *Richter*, 562 U.S. at 101, 131 S.Ct. 770 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)).

*Amaral v. Ryan*, No. CV16-00594-PHX-JAT-BSB, 2018 WL 6931889, at *5 (D. Ariz. June 26, 2018) (alterations in original), *report and recommendation adopted*, 2018 WL 6695951, at *1 (D. Ariz. Dec. 20, 2018)).

### III.    Factual and Procedural Background

#### A.    General Background

The R&R recounts the factual and procedural background of this case. (Doc. 32 at 1-10). Respondents, in their objections, supplemented this factual background. (Doc. 35 at 1-8). In the response to the objections, Petitioner also supplemented the factual background. (Doc. 36 at 2-3). Of the facts the parties supplemented, only the facts surrounding ground 4 of the Petition could be construed as an "objection." Except as to ground 4, the Court accepts the R&R's factual and procedural background, as supplemented by the parties.

In brief summary, Petitioner was sentenced to 292 years in prison for committing 25 separate crimes (over the course of approximately two months from November 2013 to January 2014), the majority of which were residential burglaries. (Doc. 9-2 at 58-109). Specifically, Petitioner was convicted of 14 residential burglaries, eight burglaries of structures other than residences, one count of theft of a credit card, one count of unlawful use of a means of transportation and one count of attempted unlawful use of a means of transportation. (Doc. 9-2 at 68). Before Petitioner committed the 25 felonies that underlie the sentences in this case, the trial judge noted Petitioner had a criminal history as follows:

The Court finds that all 25 counts are repetitive because [Petitioner] was previously convicted of criminal trespass in the first degree, a class 6 felony, on August 30th, 2010; criminal damage, a class 6 felony, on August 30th, 2010. . . .

As the Court has previously indicated, the Court will count that as one historical prior felony conviction.

[Petitioner was] also convicted of burglary in the third degree, a class 4 felony, on March 21st, 2011. . . .

The Court finds that [Petitioner] has two historical prior felony convictions, and therefore, he is in a category 3 repetitive offender range as to all 25 counts.

Mr. Patsalis, when you were 16 years of age you were placed on juvenile intensive probation; and that obviously is the highest level of probation we can place juvenile offenders on. That had no deterrent effect on you because when you were 17 you committed felony offenses; you were transferred to adult court as a juvenile for felony offenses.

You were placed on probation, your probation was revoked, and you were sentenced to prison. That had no deterrent effect on you because when you were 18 you were convicted of burglary in the third degree in Mohave County, and you were sentenced to prison on that offense as well.

You were released from prison, and now at the age of 22—perhaps you were 21 when this happened—you're committing 25 felony offenses down in the Bullhead City area.

And one of the observations I have is the juvenile criminal justice system and the adult justice system has had no effect on you whatsoever in deterring your criminal behavior.

(Doc. 9-2 at 68-70).

As indicated above, Petitioner argues that sentences of a combined 292 years are not proportional to the crimes he committed.

## B.    Ground 4

Ground 4 involves whether the state trial judge, at sentencing, understood that he had the discretion to give Petitioner either consecutive or concurrent sentences. Specifically, Petitioner argues that the state trial court erroneously believed that he was required by law to impose consecutive sentences, and that such a mistaken belief violated the Fifth, Sixth, Eighth, and Fourteenth Amendments. (Doc. 32 at 11). The R&R concluded that this claim was presented to the state court solely as a state law claim. (*Id.* at 17). The R&R then concluded that as a federal claim, this claim was unexhausted, and

that returning to state court on this claim would be futile.  (*Id.*).  Finally, the R&R concluded that Petitioner had not shown cause and prejudice nor a fundamental miscarriage of justice to overcome his failure to exhaust this claim; thus, relief should be denied.  (*Id.*).  Neither party objected to this portion of the R&R.  However, in discussing another claim of the petition, the R&R seemingly considered the state court's motivation and potential confusion as a basis for granting relief.  (*Id.* at 22).  Presumably as a result, in their objections, Respondents reiterated that the state court did not commit any error because the trial judge understood his discretion.  The Court agrees with Respondents.

At the time of Petitioner's sentence, A.R.S. § 13-711(A)[1] stated, "multiple sentences of imprisonment [] imposed on a person at the same time shall run consecutively, unless the court expressly directs otherwise."  A.R.S. § 13-711(A) was amended in 2019 to read, that sentences "may run consecutively or concurrently, as determined by the court."  While this amendment appears to be a change in the law, the amendment merely causes the language of the statute to more closely follow what the Arizona Supreme Court had held the prior version of the statute meant. *See State v. Garza*, 962 P.2d 898, 901-02 ¶¶ 11-12 (Ariz. 1998) (holding that the statute did not create a statutory presumption in favor of consecutive sentencing nor bind judicial discretion in whether to impose consecutive or concurrently sentences; instead the statute merely made consecutive sentences the default *if* the trial judge failed to specify whether the sentences would be consecutive or current). Thus, the judge's discretion under the sentencing statutes at the time of Petitioner's sentencing and today remain the same under Arizona law.

On appeal to the Arizona Court of Appeals, Petitioner argued that the state trial judge did not understand that he had the discretion to not impose consecutive sentences. (Doc. 32 at 6).  Consistent with this argument, the R&R notes four occasions from the sentencing transcript in which the sentencing judge said either the law "dictates" or "mandated" the sentence imposed.  (*Id.* at 3-5).  The Arizona Court of Appeals held, "the record reflects the superior court understood it had discretion to impose concurrent

---

[1]  Previously (before Petitioner's indictment in 2014), this statute was numbered A.R.S. § 13-708.

1   sentences." (*Id.* at 7).  Consistent with this holding, Respondents quote eight occasions in

2   the sentencing transcript in which the sentencing judge indicated that he knew he had

3   discretion and determined in his discretion that the sentence was appropriate.  (Doc. 35 at

4   2-6 & n.1).  Notably, the sentencing judge ran the sentences on two of the counts

5   concurrently to the other counts, which evidences he knew he had the discretion to do so.

6   (*Id.* at 5).

7           As indicated above, the R&R implies, without concluding, that the sentencing judge

8   misunderstood his discretion.  (Doc. 32 at 22).[2]  Preliminary this Court agrees with the

9   recommendation of the R&R that this claim is defaulted, without excuse, and relief on this

10  claim is denied for that reason.  (*See id.* at 17).  Alternatively, this Court may deny relief

11  on an unexhausted claim.  28 U.S.C. § 2254(b)(2).  Here, the Court finds that the state

12  court's determination of the facts (again, this claim was presented to the Arizona Court of

13  Appeals as an issue of state law) was not unreasonable.  Further, even if this Court were to

14  review this claim de novo as a matter of federal law, this Court independently reaches the

15  same conclusion.  Therefore, this Court finds that the trial court judge understood his

16  discretion to run the sentences consecutively or concurrently; accordingly, on the merits

17  there was no federal constitutional violation on this claim.[3]

18  **IV.    Grounds 1-3 and 5-7**

19          Petitioner's habeas petition raises seven grounds for relief.  (Doc. 32 at 10-11).  The

20  R&R recommends that this Court deny relief on grounds one, two, three and four.  Except

21  ground four, discussed above, neither party filed objections to this portion of the R&R and

22  the Court accepts and adopts it.  The R&R also notes, "Petitioner, in open Court, abandoned

23  claim six of his habeas petition. (Doc. 18 at 19-25.)"  (Doc. 32 at 11).  Thus, the Court

24  deems ground six to be withdrawn.  The only remaining claims are grounds five and seven.

25

26  [2]  Consistent with this implication, the R&R recommends that Petitioner be returned to
    state court for resentencing before a different judge.  (Doc. 32 at 27).

27

28  [3]  The Court has reached this conclusion without deciding whether, if such an error had
    occurred, it would violate the Fifth, Sixth, Eighth, and Fourteenth Amendments as alleged
    by Petitioner.

A. **Petitioner's Eighth Amendment Claim (Grounds 5 and 7)**

Petitioner ultimately merged grounds five and seven into a single claim.  (Doc. 32 at 11).   The R&R recommends that relief on this single merged claim be granted.  Specifically, the R&R recommends:

> Although this Court concludes that Petitioner's sentence is cruel and unusual in a proportionality analysis, the current societal tendency toward sentencing reform further supports the more general notion that the sentence at issue here, 292-years, is far outside the norm and not grounded in precedent or proportionality. As this Court has determined that Petitioner's sentence is unconstitutional in violation of the Eighth Amendment's ban on cruel and unusual punishment, this Court will recommend that Petitioner's habeas petition be granted, and that his case be remanded for resentencing before a different judge.

(Doc. 32 at 27).  Respondents objected to this recommendation; accordingly, the Court will review it de novo.

Specifically, Respondents raise three legal objections to the recommendation that the Court grant relief: 1) the Eighth Amendment holding of the state court is entitled to deference under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"); 2) there is no clearly established Supreme Court case law on Petitioner's issue; and 3) Petitioner's sentence is proportional to his crimes. (Doc. 35).

"The Eighth Amendment generally requires a punishment to be proportionate to the crime."  *Reece v. Williams*, No. 220CV00960JADVCF, 2020 WL 3172994, at *3 (D. Nev. June 15, 2020) (citing *Solem v. Helm*, 463 U.S. 277, 285-86 (1983)).  The Ninth Circuit Court of Appeals summarized the showing required for such a claim as follows:

> Supreme Court precedent has established "gross disproportionality" as the controlling principle in assessing a petitioner's Eighth Amendment claims. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). In non-capital cases, the court must first compare the gravity of the offense with the severity of the sentence to determine whether it is one of the "rare" cases which leads to an inference of gross disproportionality. *See Graham v. Florida*, 560 U.S. 48, 59-60 (2010). If the sentence gives rise to such an inference, the court next compares the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions.  *Id.* at 60.  Therefore, in order for [Petitioner] to be entitled to relief, he must demonstrate that it was objectively unreasonable for the Court of Appeal to determine that this is not one of the rare cases which leads to an inference of gross disproportionality. *See id.*

*Mezzles v. Katavich*, 731 F. App'x 639, 642-43 (9th Cir.), *cert. denied*, 139 S. Ct. 325

(2018).

In the context of consecutive sentences, the court in *Reece* explained:

> The Supreme Court has held, however, that, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences [will be] exceedingly rare." [citing *Solem v. Helm*, 463 U.S. 277, 289-90 (1983) (quoting *Rummel v. Estelle*, 445 U.S. 263, 272 (1980))]. "Reviewing courts . . . should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." [citing *Solem*, 463 U.S. at 289-90].
>
> [A] consecutive ten-years-to-life sentence imposed as a deadly weapon enhancement falls short of implicating Eighth Amendment concerns. [citing *United States v. Parker*, 241 F.3d 1114, 1117 (9th Cir. 2001) (holding that mandatory consecutive sentences imposed by statute do not violate the Eighth Amendment and that, "as long as the sentence imposed on a defendant does not exceed statutory limits, this court will not overturn it on Eighth Amendment grounds"); *Harmelin v. Michigan*, 501 U.S. 957, 994 (1991) ("Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense. . . .")].

*Reece*, 2020 WL 3172994, at *3 & nn. 24-26.

Additionally, the Supreme Court has held that a 25-year-to-life sentence for grand theft is not cruel and unusual punishment:

> Ewing has been convicted of numerous misdemeanor and felony offenses, served nine separate terms of incarceration, and committed most of his crimes while on probation or parole. His prior "strikes" were serious felonies including robbery and three residential burglaries. To be sure, Ewing's sentence is a long one. But it reflects a rational legislative judgment, entitled to deference, that offenders who have committed serious or violent felonies and who continue to commit felonies must be incapacitated. The State of California "was entitled to place upon [Ewing] the onus of one who is simply unable to bring his conduct within the social norms prescribed by the criminal law of the State." *Rummel*, *supra*, at 284. Ewing's is not "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin*, 501 U.S., at 1005 (KENNEDY, J., concurring in part and concurring in judgment).
>
> We hold that Ewing's sentence of 25 years to life in prison, imposed for the offense of felony grand theft under the three strikes law, is not grossly disproportionate and therefore does not violate the Eighth Amendment's prohibition on cruel and unusual punishments.

*Ewing v. California*, 538 U.S. 11, 30-31 (2003) (alteration in original).

**B.     Arizona State Court's Eight Amendment Analysis in Petitioner's Case**

Petitioner exhausted an Eighth Amendment claim in state court.  The Arizona Court

of Appeals held:

V. Cruel and Unusual Punishment

¶ 23 Patsalis argues, for the first time on appeal, that his 292-year prison sentence constitutes cruel and unusual punishment. Because Patsalis failed to raise this argument in the superior court, we review for fundamental error, while reviewing constitutional issues de novo. *See State v. Kasic*, 228 Ariz. 228, 231, ¶ 15, 265 P.3d 410, 413 (App. 2011) (argument not raised at trial is reviewed for fundamental error, but constitutional issues reviewed de novo). A sentence in violation of constitutional protections is "an illegal sentence [that] constitutes fundamental error." *Id.* For reasons explained below, we disagree with Patsalis' argument.

¶ 24 The Eighth Amendment's prohibition on cruel and unusual punishment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S. 277, 284, 103 S. Ct. 3001, 3006, 77 L.Ed. 2d 637 (1983). In a non-capital case, whether a punishment is cruel and unusual under the Eighth Amendment and the Arizona constitution is measured according to a "narrow proportionality principle that prohibits sentences that are grossly disproportionate." *State v. Berger*, 212 Ariz. 473, 475, ¶ 10, 134 P.3d 378, 380 (2006) (internal quotations and citations omitted); *see also State v. Davis*, 206 Ariz. 377, 380-81, ¶ 12, 79 P.3d 64, 67-68 (2003) (no "compelling reason to interpret Arizona's cruel and unusual punishment provision differently from the related provision in the federal constitution") (citation omitted).

¶ 25 Our supreme court has emphasized that even a sentence that is "severe and unforgiving" can fail to meet the threshold test of gross disproportionality. *Berger*, 212 Ariz. at 477, ¶ 16, 134 P.3d at 382. Thus, "only in exceedingly rare cases will a sentence to a term of years violate the Eighth Amendment's prohibition on cruel and unusual punishment." *Id.* at 477, ¶ 17, 134 P.3d at 382 (internal quotations and citation omitted).

¶ 26 In assessing whether a sentence is cruel and unusual, "a court first determines if there is a threshold showing of gross disproportionality by comparing the gravity of the offense [and] the harshness of the penalty." *Id.* at 476, ¶ 12, 134 P.3d at 381 (internal quotations and citations omitted). Only if there is a threshold showing of gross disproportionality may the court conduct an intra- and inter-jurisdictional analysis and "[consider] the sentences the state imposes on other crimes and the sentences other states impose for the same crime." *Id.*

¶ 27 In weighing whether a sentence is grossly disproportionate to the crime, we look to the "specific facts and circumstances of the offenses." *Davis*, 206 Ariz. at 384, ¶ 32, 79 P.3d at 71. **"[A]s a general rule, this court will not consider the imposition of consecutive sentences in a proportionality inquiry." *Berger*, 212 Ariz. at 479, ¶ 27, 134 P.3d at 384 (internal quotations and citation omitted). This means that our analysis focuses on the individual sentence imposed for each count and not the cumulative sentence of 292 years.**

¶ 28 Here, Patsalis' individual sentences are not grossly disproportionate as defined under the authorities discussed above. The superior court sentenced Patsalis as a category three repetitive offender with two historical prior felony convictions. The superior court found that, "for

all but a few of the counts," there were "separate victims with a separate harm."

**¶ 29 Patsalis argues, however, that we should examine his sentences, not individually, but as a whole as our supreme court did in _Davis_. Specifically, Patsalis argues "this case should be treated similarly to _Davis_" because his conviction was for nonviolent property crimes, he was a young adult when he committed the crimes, and 292 years for all counts is "way out of proportion to the gravity of [his] crimes." Acknowledging that we generally will not look at the consecutive nature of a sentence in our proportionality analysis, he argues "the current factual scenario is an exception to the general rule . . . and the cruel and unusual punishment analysis [should be] applied to the total sentence of 292 years." We disagree.**

¶ 30 _Davis_ involved a sentence of 52 years, resulting from four mandatory 13-year consecutive sentences, after a defendant's conviction for sexual misconduct with a minor. _Davis_, 206 Ariz. at 380, ¶ 11, 79 P.3d at 67. There, in concluding the defendant's sentence constituted cruel and unusual punishment, the Arizona supreme court considered the consecutive nature of the defendant's sentence. _Id._ at 384-85, ¶ 36, 79 P.3d at 71-72. This was, in part, because of the mandatory nature of the sentencing, _id._ at 385, ¶ 37, 79 P.3d at 72, and, in part, because the facts and circumstances of that case demonstrated the defendant had been "caught in the very broad sweep of the governing statute," which criminalized sex between a person younger than 15 and a person older than 18, whether it involved rape, incest, pedophilia, or a boyfriend-girlfriend relationship. _Id._ at 385, ¶ 36, 79 P.3d at 72. Moreover, the defendant possessed below average intelligence, and the underage victims had consented to sex with the defendant. _Id._

**¶ 31 Here, unlike the situation in _Davis_, the jury convicted Patsalis for exactly the type of conduct the statutes prohibit. _See_ A.R.S. §§ 13-1506 (burglary in the third degree, includes entering a non-residential structure with the intent to commit "any theft or felony therein."), 13-1507 (burglary in the second degree committed by "entering or remaining unlawfully in or on a residential structure with the intent to commit any theft or any felony therein"). And although Patsalis argues his actions constituted "nonviolent property offenses," the offenses were serious. Two victims testified that they heard someone in their home in the night and other victims testified that they or their family members continued to feel scared or worried after the burglaries.**

¶ 32 In conclusion, Patsalis' sentence was not cruel and unusual within the meaning of the Eighth Amendment or our state constitution.

_State v. Patsalis_, No. 1 CA-CR 15-0409, 2016 WL 3101786, at *4-6 ¶¶ 23-32 (Ariz. Ct. App. June 2, 2016) (alterations in original) (emphasis added).

The R&R recommends that this Court not give AEDPA deference to the Court of Appeals' decision (and instead this Court review this claim de novo) because "[t]he state court erred in not determining whether Petitioner's consecutive sentences violate the Eighth Amendment's ban on cruel and unusual punishment." (Doc. 32 at 20). Respondents

object to this conclusion and argue that the Arizona Court of Appeals did consider Petitioner's Eighth Amendment claim but that, "the court *disagreed* with Patsalis's argument that his sentences should be considered as a 'whole' as a general matter." (Doc. 35 at 9) (emphasis in original). Further, Respondents argue that, "the Arizona Court of Appeals did, in fact, go on to consider whether Patsalis's sentence—as a whole—violated the Eighth Amendment." (Doc. 35 at 9).

*Berger*, which was decided after *Davis*, explained the "exception" *Davis* created to the general rule that Arizona courts will not consider whether cumulative, verses individual, sentences are proportional. The *Berger* court explained:

> ¶ 42 Only after concluding that objective factors about Davis's offense showed he had been caught up in the expansive reach of the statute did the court determine that the consecutive nature of his sentences was relevant to the Eighth Amendment analysis. *Id.* at 387, ¶ 47, 79 P.3d at 74. In so doing, however, the court noted that its conclusion rested on the "specific facts and circumstances of Davis's offenses," and reaffirmed that the court "normally will not consider the imposition of consecutive sentences in a proportionality inquiry. . . ." *Id.* at 387-88, ¶¶ 47-48, 79 P.3d at 74-75.
>
> ¶ 43 Berger argues that, in light of *Davis*, the court must consider the consecutive nature of his sentences in the Eighth Amendment analysis, along with the "victimless" nature of his crime, and that this court must, at the least, order a re-sentencing hearing so he can present "mitigation evidence."
>
> ¶ 44 Berger's conduct is at the core, not the periphery, of the prohibitions of A.R.S. § 13-3553(A)(2)—the knowing possession of visual depictions of sexual conduct involving minors—and he, unlike Davis, cannot be characterized as someone merely "caught up" in a statute's broad sweep. Thus, there is no basis here to depart from the general rule that the consecutive nature of sentences does not enter into the proportionality analysis. [footnote omitted]

*State v. Berger*, 134 P.3d 378, 386 ¶¶ 42-44 (Ariz. 2006) (alteration in original).

It appears that *Davis*'s exception is limited to circumstances wherein the defendant's actions fell on the periphery of a broad sweeping statute. In this case, the Arizona Court of Appeals concluded that Petitioner's behavior fell exactly within the statute; therefore, he did not qualify for the *Davis* exception. *Patsalis*, 2016 WL 3101786, at ¶ 31.

Thus, whether the Arizona Court of Appeals' decision in Petitioner's case is entitled to AEDPA deference turns on whether, by considering an Eighth Amendment proportionality claim directly, but rejecting it on a legal ground, deference extends to

- 11 -

factual arguments not considered by the state court.  This Court agrees with the R&R that the Arizona Court of Appeals did not consider the factual argument that Petitioner's consecutive sentences as a whole were not proportional.  However, the Arizona Court of Appeals did consider whether, as a matter of law, Petitioner was entitled to have a proportionality analysis applied to his consecutive sentences and concluded he did not. The question for this Court then is whether, if the law is not clearly established, this legal conclusion of the Arizona Court of Appeals is entitled to AEDPA deference or whether because the Arizona Court of Appeals refused to consider the claim as a matter of fact, this Court considers the claim de novo.

### 1.    Clearly Established Law

Whether the Arizona Court of Appeals' decision in Petitioner's case is entitled to AEDPA deference dovetails with Respondents' second argument.    Specifically, Respondents argue that there is no clearly established federal law that requires a proportionality analysis to be applied to consecutive sentences as a whole; therefore, the Arizona Court of Appeals could not have violated clearly established federal law because there is none.  (Doc. 35 at 16).

Assuming Respondents are correct that there is no clearly established law requiring that proportionality in sentencing applies to consecutive sentences as a whole, Petitioner is asking this Court to conclude that although the Arizona Court of Appeals applied the correct law in deciding not to consider his argument, the decision does not deserve deference because federal law does not preclude his argument.  In other words, Petitioner is arguing that this Court should determine that although the law on whether proportionality applies to consecutive sentences is an open question under federal law, by declining to expand the scope of proportionality as Petitioner seeks, the state court decision lost its entitlement to AEDPA deference.  Then Petitioner would ask this Court to conclude that although clearly established Supreme Court case law does not require this Court to apply proportionality to consecutive sentences as a whole, this Court should conclude that such an application is appropriate under federal law and consider such argument de novo in this

1    case.

2            Assuming Respondents are incorrect and there is clearly established Supreme Court

3    precedent requiring that a proportionality analysis be applied to a consecutive sentence as

4    a whole, then the Arizona Court of Appeals would have erred in refusing to apply such law

5    to Petitioner's Eighth Amendment claim.  In that instance, this Court would review the

6    claim de novo. *Amado v. Gonzalez*, 758 F.3d 1119, 1131 (9th Cir. 2014).  The Ninth Circuit

7    Court of Appeals explained:

> Under AEDPA, the federal court must ascertain if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). If factual determinations are involved, the federal court must ascertain if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* If the federal court finds that the state court adjudication on the merits does not withstand deferential scrutiny under § 2254(d), the federal court must then "decide the habeas petition by considering de novo the constitutional issues raised." *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc). This means that where a state court has adjudicated a claim on the merits with a written decision denying relief based on one element of the claim and therefore does not reach the others, federal courts should give § 2254(d) deference to the element on which the state court ruled and review *de novo* the elements on which the state court did not rule.

16   *Id.*  Thus, if the law is clearly established, this Court would review this claim de novo

17   regardless of whether it did so because the Arizona Court of Appeals declined to consider

18   the claim[4] (as the R&R concluded) or because the Arizona Court of Appeals' application

19   of the law was contrary to clearly established Supreme Court precedent.

20           As quoted above, the R&R states, "The state court erred in not determining whether

21   Petitioner's consecutive sentences violate the Eighth Amendment's ban on cruel and

22   unusual punishment."  (Doc. 32 at 20).  Although the R&R does not affirmatively hold

23   such error occurred because the law is clearly established requiring a proportionality

24   inquiry into consecutive sentences, this holding seems to be implicit in the R&R's

25   conclusion that the state court erred.  Thus, the Court will first consider whether the law

26

27   ─────────────────────
     [4]   The R&R cites four cases for the conclusion that if a state court failed to address a
28   properly presented claim, this Court reviews the claim de novo.  (Doc. 32 at 20-21).
     Neither party objected to this legal conclusion and the Court adopts it.

- 13 -

1   was clearly established.  As stated above, the Court looks to only the holdings of the United

2   States Supreme Court to determine whether the law was clearly established.  *See, e.g.*,

3   *Bradford v. Davis*, 923 F.3d 599, 609 (9th Cir. 2019).

4       Respondents in their objections cite a myriad of cases holding that whether a

5   proportionality analysis applies to consecutive sentences is not clearly established.

6   (Doc. 35 at 10-13).  Respondents then conclude by stating:

7           The fact that a number of courts disagree with the R&R's conclusion
        demonstrates that the Eighth Amendment law on this issue is not "clearly
8       established." *See Ponce v. Felker*, 606 F.3d 596, 605 (9th Cir. 2010) (a
        "pronounced split among other courts" is an indication that a proposition is
9       not clearly established federal law). This is fatal to Patsalis's argument,
        because "it is not an unreasonable application of clearly established Federal
10      law for a state court to decline to apply a specific legal rule that has not been
        squarely established by [the Supreme Court]." *Knowles v. Mirzayance*, 556
11      U.S. 111, 112 (2009) (internal quotation omitted).

12  (Doc. 35 at 13 (alteration in original)).  The Court agrees with Respondents' conclusion

13  that significant disagreement among courts as to the state of the law would show the law

14  is not clearly established.

15      Petitioner responds to the objections and argues that the majority of cases on which

16  Respondents rely were mistakenly decided.  Specifically, Petitioner argues that any cases

17  that rely on *United States v. Aiello*, 864 F.2d 257, 265 (2d Cir. 1988), "provide questionable

18  legal authority" because, Petitioner argues, the Court in *Aiello* mistakenly relied on the

19  Supreme Court's recitation of the procedural history of *O'Neil v. Vermont*, 144 U.S. 323,

20  331 (1892) as the holding of the case.  (Doc. 36 at 4-5).[5]  By this Court's research, 48

21  separate cases, including cases out of this district, have cited *Aiello* on this point.  This

22  Court is not convinced that 48 courts blindly followed the non-binding precedent of *Aiello*

23  without independently determining that the Eighth Amendment does not require that

24  consecutive sentences be considered as a whole as part of a proportionality inquiry.

25      Regardless, however, even if *Aiello* implied that the Supreme Court of the United

26  States held that consecutive sentences are considered individually and not as a whole,

27  _____

28  [5]   Petitioner's characterization of *Aiello* is not completely accurate.  In actuality, the
    Second Circuit in *Aiello* quoted the United States Supreme Court in *O'Neil* and specifically
    noted that the United States Supreme Court was quoting the Vermont Supreme Court.

*Aiello* does not change the fact that the Supreme Court has never held the opposite; namely: that consecutive sentences must be considered as a whole in reviewing an Eight Amendment proportionality claim.  The R&R relies on two United States Supreme Court cases for its implicit conclusion that a proportionality inquiry requires consideration of consecutive sentences as a whole: *Lockyear v. Andrade*, 538 U.S. 63, 74 (2003) and *Hutto v. Davis*, 454 U.S. 370, 371, 374 (1982) (per curium).  (Doc. 32 at 19).

In *Andrade*, the Supreme Court did not address the question squarely presented in this case.  Instead, the Supreme Court held that a California court did not violate clearly established federal law when it concluded that Andrade's sentence was not cruel and unusual punishment under a proportionality analysis.  *Andrade*, 538 U.S. at 77.  The California state court had considered Andrade's consecutive sentences (two 25-year sentences) as a whole in its analysis.  *Id.* at 69 (quoting the California Court of Appeal which held, "[c]omparing [Andrade's] crimes and criminal history with that of defendant Rummel, we cannot say the sentence of 50 years to life at issue in this case is disproportionate and constitutes cruel and unusual punishment under the United States Constitution" (second alteration in original)).  While the United States Supreme Court clearly held that the California Court of Appeal did not err in applying the proportionality analysis to the consecutive sentence as a whole, the Supreme Court did not hold that it was required to do so.  In other words, the Supreme Court never considered the question of whether the California court had the option of considering each 25-year sentence independently to satisfy the Eighth Amendment's proportionality requirements.

Further, the Supreme Court in *Andrade* made numerous statements about the fact that the Supreme Court's Eighth Amendment proportionality jurisprudence was very unclear.  *Id.* at 72-73 ("[O]ur precedents in this area have not been a model of clarity . . . . Indeed, in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow . . . . Our cases exhibit a lack of clarity regarding what factors may indicate gross disproportionality . . . . And in *Harmelin*, both Justice Kennedy and Justice Scalia

repeatedly emphasized this lack of clarity: that '*Solem* was scarcely the expression of clear . . . constitutional law,'. . . 'we lack clear objective standards to distinguish between sentences for different terms of years,' the 'precise contours' of the proportionality principle 'are unclear,'. . . the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." (internal citations omitted)).  The Supreme Court also found clearly established the legal principle that, "[a] gross disproportionality principle is applicable to sentences for terms of years." *Id.* at 72.  However, the Court never commented on whether, when those sentences were to be served consecutively, are they considered individually or as a whole when applying the gross disproportionality principle.

In *Hutto v. Davis*, there was no issue of consecutive sentences being viewed individually or as a whole presented to the Supreme Court.  *See generally* 454 U.S. 370. Further, in his argument that his sentence was disproportionate, Davis appeared to treat his sentences individually.  *See id.* at 371 ("At the time of [Davis'] conviction, Virginia law authorized fines of up to $25,000 and prison terms of not less than 5 nor more than 40 years for **each** of [Davis'] offenses. After exhausting direct appeal, [Davis] brought a habeas action in the United States District Court for the Western District of Virginia, asserting that **a** 40-year sentence was so grossly disproportionate to the crime of possessing less than nine ounces of marihuana that it constituted cruel and unusual punishment as proscribed by the Eighth and Fourteenth Amendments." (emphasis added) (citation omitted)).  Thus, this Court finds that *Hutto* does not create any clearly established law regarding whether consecutive sentences must be considered as a whole, rather than individually, for purposes of a proportionality analysis.

Finally, the R&R notes that Petitioner in this case relies on *Weems v. United States*, 217 U.S. 349 (1910).  (Doc. 32 at 18).  However, the proportionality analysis in *Weems* addressed a sentence for something other than a term of years (specifically, Weems was sentenced to 15 years of carrying a chain at the ankle which was hooked to his wrist while

1    doing hard and painful labor, a fine, and lifelong surveillance).  *Weems*, 217 U.S. at 358,

2    364.  Thus, *Weems* also creates no clearly established law regarding whether consecutive

3    sentences for specific terms of years must be considered as a whole, rather than

4    individually, for purposes of a proportionality analysis.

5         Thus, the Court agrees with Respondents that there is no clearly established law

6    requiring that consecutive sentences be considered as a whole, rather than individually, for

7    purposes of a proportionality analysis.  This objection will be sustained.

8                    **2.      Deference to Arizona State Court Decision**

9         Next, the Court must decide what impact, if any, the fact that there is no clearly

10   established law has on AEDPA deference.  If this Court cannot consider this claim de novo,

11   that ends the inquiry of whether Petitioner is entitled to relief because the state court did

12   not enter a decision that was contrary to or an unreasonable application of clearly

13   established federal law or was based on an unreasonable determination of the facts.

14        Conversely, the state court did not consider whether Petitioner's consecutive

15   sentences, as a whole, were proportional.[6]  Thus, this Court does not have a state court

16   decision on Petitioner's factual theory to which to give deference under AEDPA.

17   Nonetheless, it would be inconsistent with AEDPA deference to conclude that the state

18   court decision applied all the clearly established law (and determined the facts) correctly,

19   but nonetheless is not entitled to AEDPA deference because the Unites States Supreme

20   Court has not **precluded** Petitioner's theory of relief in this case.

21        The Ninth Circuit Court of Appeals has held that, "[u]nder AEDPA, an adjudication

22   on the merits is 'a decision finally resolving the parties' claims . . . that is based on the

23   substance of the claim advanced, rather than on a procedural, or other, ground.'"  *Amado*,

24   758 F.3d at 1130-31 (ellipsis in original) (quoting *Lambert v. Blodgett*, 393 F.3d 943, 969

25   _____

26   [6]  Respondents argue in their objections that the state court found the sentences as a whole
     were proportional.  (Doc. 35 at 9-10).  The Court cannot locate that holding in the Arizona

27   Court of Appeals' decision.  The state court considered (and rejected as a matter of law)
     the argument of whether consecutive sentences should be considered as a whole, but the

28   state court did not apply a proportionality inquiry to the 292-year sentences aggregately.
     Thus, to the extent the objections argue that the state court decided whether the 292-year
     sentences as a whole was proportional, that objection is overruled.

(9th Cir. 2004)).  Here, the Arizona Court of Appeals resolved Petitioner's claim on the merits of the legal theory he presented.  After the state court resolved his legal theory of the case against him, it did not apply that rejected legal theory to the facts of his case.  Thus, there was an adjudication on the merits as a matter of law, but not as a matter of fact.  In other words, Petitioner's Eighth Amendment proportionality claim was not rejected on a "procedural, or other, ground."

In sum, the Court finds that because the Arizona Court of Appeals squarely addressed the merits of Petitioner's legal theory of his case, and rejected it on grounds that are not contrary to or an unreasonable application of clearly established federal law, the decision is entitled to deference under the AEDPA.  Nonetheless, here, Petitioner argues for an expansion of Eighth Amendment proportionality law to mandatorily include considering consecutive sentences as a whole, rather than individually.  To argue for an expansion of the law beyond what the Supreme Court has clearly decided, in most instances a defendant must pursue a direct appeal.  This is because AEDPA deference will preclude a habeas court from creating new law and overturning a state court decision that was not contrary to clearly established Supreme Court case law.  This principle can be seen in other contexts; for example, criminal defendants whose cases have concluded direct appeals frequently do not benefit from later changes in the law.  *See generally Teague v. Lane*, 489 U.S. 288, 310 (1989).

Thus, this Court will not refuse to give deference to the Arizona Court of Appeals' decision in Petitioner's case (and effectively declare the entire line of Arizona cases on proportionality under *Berger*, 134 P.3d 378, and its progeny outside the scope of AEDPA deference) when the Arizona state courts have not decided those cases in a way that was contrary to or an unreasonable application of clearly established federal law.  Accordingly, giving the required AEDPA deference to the state court's interpretation of the law, the Petition in this case is denied on this basis alone.[7]

---

[7]  The Court notes that in his Reply, Petitioner argues that the state court decision is not entitled to deference because the state court decided only a state law claim and not a federal claim.  However, in the opinion in Petitioner's case, the Arizona Court of Appeals specifically said it was considering both the state law claim and the Federal Eighth

**C.      De Novo Review of Petitioner's Eighth Amendment Claim**

Alternatively, the Court will consider de novo whether Petitioner is entitled to relief. *See* note 4 above.   Specifically, Petitioner presented the argument that a federal proportionality analysis requires considering his sentences in the aggregate, rather than only individually, to the state court and it declined to consider his claim as a matter of fact (it rejected the claim as a matter of law).  This Court will engage in this alternative analysis in the event a reviewing court determines such a holding is not entitled to AEDPA deference in order to spare Petitioner the time involved in a multi-stage appeal.

**1.      Does Proportionality Apply to Consecutive Sentences?**

The first question for de novo review is whether as a matter of constitutional law the Court should (even if it is not required to) apply the concept of proportionality to consecutive sentences rather than focusing on whether each individual sentence is proportional to the crime committed.  This question turns in part on how the Court views *O'Neil*, 144 U.S. at 331.  *O'Neil*, quoting the Vermont state court below, states:

> [If the defendant] has subjected himself to a severe penalty, it is simply because he has committed a great many such offenses. It would scarcely be competent for a person to assail the constitutionality of the statute prescribing a punishment for burglary on the ground that he had committed so many burglaries that, if punishment for each were inflicted on him, he might be kept in prison for life.

*Id.* at 331.

As Petitioner notes, some lower courts have cited this language of *O'Neil* as if it was the holding of the United States Supreme Court, rather than a quote of another court. *See, e.g.*, *Gonzalez-Barrera v. Ryan*, No. CV15-8024-PCT-JJT(JFM), 2016 WL 4611576, at *25 (D. Ariz. Feb. 19, 2016), *report and recommendation adopted*, No. CV-15-08024-PCT-JJT, 2016 WL 4592179 (D. Ariz. Sept. 2, 2016).  Ultimately in *O'Neil*, the United State Supreme Court dismissed for lack of jurisdiction (although the dissent reached the proportionality issue).  *O'Neil*, 144 U.S. at 337.  In contrast to the courts that have

Amendment claim.  *Patsalis*, 2016 WL 3101786, at *5 ¶ 24 (holding that the Arizona claim and the Eighth Amendment claim are identical and addressing both together).  Thus, this argument against deference is also rejected.  Further, the R&R is rejected on this point. (Doc. 32 at 20 (finding the Arizona Court did not address or decide the federal claim)).

referenced the above language as the holding in *O'Neil*, other courts have referred to this language as dicta.  *See, e.g.*, *State v. Ali*, 895 N.W.2d 237, 245 (Minn. 2017); *State v. Becker*, 936 N.W.2d 505, 515 (Neb. 2019).  This Court agrees with the supreme courts of Minnesota and Nebraska; describing this language as dicta, rather than as a holding of the United States Supreme Court, is more accurate.[8]

Nonetheless, both the Minnesota and Nebraska courts determined that considering sentences individually, rather than consecutively, was the correct result.  The Minnesota Supreme Court stated:

> Moreover, the [United States Supreme] Court has not squarely addressed the issue of whether consecutive sentences should be viewed separately when conducting a proportionality analysis under the Eighth Amendment because the Court's discussion of the issue in *O'Neil* was dictum. Admittedly, we have elected to follow well-reasoned Supreme Court dictum in the past. *See, e.g.*, *State v. Craig*, 826 N.W.2d 789, 793 (Minn. 2013). But here, we simply hold that absent further guidance from the Court, we will not extend the *Miller/Montgomery* rule to include Mahdi and other similarly situated juvenile offenders who are being sentenced for multiple crimes, especially when the Court has not held that the *Miller/Montgomery* rule applies to sentences other than life imprisonment without the possibility of parole and the issue of whether consecutive sentences should be viewed separately when conducting a proportionality analysis under the Eighth Amendment remains an open question.

*Ali*, 895 N.W.2d at 246 (footnotes omitted).[9]  The Nebraska Supreme Court stated: "We

---

[8]  This language could also be described as a factual background or procedural history.

[9]  In discussing courts that have followed *O'Neil's* reasoning, the *Ali* court stated:

> *See Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001) ("[I]t is wrong to treat stacked sanctions as a single sanction. To do so produces the ridiculous consequence of enabling a prisoner, simply by recidivating, to generate a colorable Eighth Amendment claim."); *Hawkins v. Hargett*, 200 F.3d 1279, 1285 n.5 (10th Cir. 1999) (explaining that the "Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence"); *United States v. Aiello*, 864 F.2d 257, 265 (2d Cir. 1988) (same); *State v. Berger*, 212 Ariz. 473, 134 P.3d 378, 380, 384 (2006) (affirming a 200-year sentence for multiple acts of child pornography because "[a] defendant has no constitutional right to concurrent sentences for two separate crimes" (quoting *State v. Jonas*, 164 Ariz. 242, 792 P.2d 705, 712 (1990))); *State v. Hairston*, 118 Ohio St.3d 289, 888 N.E.2d 1073, 1077-

view each sentence individually and conclude that each individual sentence imposed on Becker was well within the statutory limits and was not grossly disproportionate in violation of the Eighth Amendment." *Becker*, 936 N.W.2d at 515.

After quoting *O'Neil*, the Oregon Supreme Court, in reaching the same conclusion as the courts in Minnesota and Nebraska, specifically noted that *O'Neil* was not binding. "To be sure, the passage quoted above was *dicta* for purposes of the issues facing the United States Supreme Court in *O'Neil*." *Kinkel v. Persson*, 417 P.3d 401, 410 & n.12 (Or. 2018), *cert. denied sub nom. Kinkel v. Laney*, 139 S. Ct. 789 (2019); *see also id.* at 410 n.12 ("After noting that *O'Neil* had not assigned error to the Vermont Supreme Court's ruling that an aggregate life sentence for 306 liquor law convictions did not violate the Cruel and Unusual Clause, the United States Supreme Court repeated with apparent approval the Vermont Supreme Court's reasoning, which is quoted above." (citation omitted)).

This Court, therefore, rejects Petitioner's argument that any case that cites *Aiello* should be disregarded.  It is clear that the courts in Minnesota, Nebraska, and Oregon were not mislead in some way by *Aiello*.  They understood that *O'Neil* was non-binding but determined independently that proportionality should apply to individual sentences and not

79 (2008) (analyzing each sentence for each crime separately and rejecting the argument that an aggregate prison term of 134 years for multiple crimes violated the Eighth Amendment); *State v. Buchhold*, 727 N.W.2d 816, 823-26 (S.D. 2007) (holding that consecutive sentences for 11 sexual assault counts that amounted to a "de facto" life sentence of 175 years in prison did not violate the Eighth Amendment). According to the State, "[a]ll of these cases stand for the unremarkable proposition that it is constitutionally permissible to punish a person who commits two, three, four or even more crimes (including murder) more severely than a person who commits a single crime." *See Ewing v. California*, 538 U.S. 11, 25, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) ("Recidivism has long been recognized as a legitimate basis for increased punishment.").

*Ali*, 895 N.W.2d at 242-43 (alterations in original).

consecutive sentences as a whole.

Many other courts have reached the same conclusion without explicitly noting that *Aiello* was relying on dicta from *O'Neil*. For example, the Ohio Supreme Court stated: "When considering whether a cumulative prison term imposed for multiple offenses is cruel and unusual punishment, several federal courts of appeals have concluded that the Eighth Amendment proportionality review does not apply to cumulative sentences." *State v. Hairston*, 888 N.E.2d 1073, 1077 ¶ 17 (Ohio 2008) (citing the Second, Seventh, and Tenth circuits). The Ohio Supreme Court then reached the same conclusion as the Second, Seventh, and Tenth circuits, holding,

> In accordance with this analysis, we conclude that for purposes of the Eighth Amendment and Section 9, Article I of the Ohio Constitution, proportionality review should focus on individual sentences rather than on the cumulative impact of multiple sentences imposed consecutively. Where none of the individual sentences imposed on an offender are grossly disproportionate to their respective offenses, an aggregate prison term resulting from consecutive imposition of those sentences does not constitute cruel and unusual punishment.

*Id.* at 1078 ¶¶ 18-20 (noting that courts in Arizona, Iowa, Colorado, and South Dakota had reached the same conclusion); *see also Wahleithner v. Thompson*, 143 P.3d 321, 323 ¶ 12 (Wash. Ct. App. 2006) (reaching the same conclusion).

Conversely, in the context of juvenile offenders, several courts have concluded that a proportionality analysis requires looking at the aggregate, not individual, sentence. *State v. Boston*, 363 P.3d 453, 456-58 (Nev. 2015) (noting that the Ninth Circuit Court of Appeals, California and Florida agree with this conclusion and Arizona and the Sixth Circuit do not). Outside of the context of juveniles, this Court has not located (and the parties have not cited[10]) a single case in which a court has held that a proportionality review should apply to consecutive sentences in the aggregate, rather than individually.

---

[10]   In his Reply, Petitioner (through counsel) states, "But Supreme Court precedent is clear. A court reviewing the proportionality of a defendant's sentence must comprehensively evaluate the *entire* sentence when weighing the gravity of the offense with the harshness of the penalty." (Doc. 18 at 5) (emphasis in original). Petitioner cites nothing in support of this statement of law. Had Petitioner been pro se, the Court could understand why he might think he could make statements of law without citation. Counsel, on the other hand, should know this is not appropriate practice; particularly given the voluminous authority that is contrary to Petitioner's argument.

In *Andrade v. Attorney General of State of California*, 270 F.3d 743, 758 (9th Cir. 2001), *rev'd sub nom. Lockyer v. Andrade*, 538 U.S. 63, the Ninth Circuit Court of Appeals considered petitioner's sentences in the aggregate, rather than individually. *Id.* Although the court did not dedicate significant discussion as to why it viewed the sentences in the aggregate for purposes of the proportionality analysis, it mentioned the fact that under California law it was mandatory that the sentences be consecutive. *Id.* Specifically, the Ninth Circuit Court of Appeals stated:

> Andrade was sentenced to two consecutive indeterminate sentences of 25 years to life in prison. Because of a unique feature of the Three Strikes law, the sentencing judge had no discretion to impose the sentences concurrently. (citation omitted). [] The dissent stresses the fact that Andrade's sentence is for two offenses rather than one. There is no dispute that Andrade was convicted of two petty theft offenses with a prior. However, as noted above, California's Three Strikes law precluded the trial judge from exercising any sentencing discretion; the court was required to impose consecutive sentences. The cases cited by the dissent are distinguishable, as it does not appear in these cases that the sentencing judge or official was required to impose consecutive sentences. *Hawkins v. Hargett*, 200 F.3d 1279, 1280 (10th Cir.1999) ("The trial judge ordered that the [ ] sentences be served consecutively. . . ."); *United States v. Aiello*, 864 F.2d 257, 262 (2d Cir. 1988) ("The district court did not abuse its substantial discretion in choosing an appropriate sentence."); *see also Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir.2001) (explaining that the Superintendent imposed consecutive "sentences" denying yard privileges to a prisoner, a sanction "authorized by state law").

*Id.* at 758 & n.19 (second alteration in original).

Here, as discussed above, whether Petitioner's sentences would be concurrent or consecutive was within the discretion of the trial judge. Specifically, the trial judge stated:

> And Mr. Patsalis, if I impose concurrent sentences for 25 offenses[,] I'm sending the message to people that if you're going to burglarize a house in a neighborhood, you should just burglarize all of the houses because you are only going to get one sentence. Or if you're going to burglarize this house on one particular occasion, if you come back a week later and break into the same house you can do that because you'll only get one sentence.

> And Mr. Patsalis, I cannot send the message to the community that you can burglarize multiple houses and victimize multiple people on multiple occasions and you'll simply get one sentence for it. There has to be accountability and responsibility for each separate offense that you commit and have been convicted of.

> And under those circumstances, Mr. Patsalis, . . . all but two of these sentences are going to run consecutive.

(Doc. 35 at 4–5).  Thus, to the extent there might[11] be a requirement that **mandatory consecutive sentences** be considered in their totality, Petitioner's consecutive sentences were discretionary; therefore, any such rule would not apply to him.

In sum, this Court has identified nine states and four circuits that have held a proportionality review encompasses only the individual sentence for each crime committed and not the aggregate sentence that might result from consecutive sentences.  This Court has found no court which has held that Petitioner in this case (a non-juvenile who received non-mandatory consecutive sentences) is entitled to have a proportionality analysis applied to his sentence as a whole.  This Court will join the weight of the authority in concluding that proportionality, in this context, does not apply to aggregate sentences.  Petitioner makes no argument that his individual sentences are not proportionate to his crimes.  Accordingly, relief is denied as a matter of law.

### 2.    Alternatively, if Proportionality Applies to Consecutive Sentences, Are Petitioner's Sentences Proportional?[12]

As a second alternative, the Court will consider whether Petitioner's sentences are proportional assuming this Court is incorrect that the Arizona Court of Appeals' decision is entitled to deference under AEDPA, and assuming the Ninth Circuit Court of Appeals concludes that a non-juvenile who received non-mandatory consecutive sentences is entitled to have his sentences considered as a whole, rather than individually, for an Eight Amendment proportionality claim.

---

[11]   As indicated above, the Ninth Circuit Court of Appeals was reversed in *Andrade* as to the overall proportionality analysis; however, the reversal did not specifically address the issue of considering consecutive sentences in the aggregate or individually.  Further, other Ninth Circuit Court of Appeals cases have found the mandatory nature of consecutive sentences did not cause the sentences to be disproportional, *see, e.g.*, *United States v. Parker*, 241 F.3d 1114, 1117 (9th Cir. 2001); however, the court did not specifically address whether the sentence should be considered individually or in the aggregate for purposes of a proportionality analysis.

[12]   In his Response to Respondents' objections, Petitioner argues that Respondents did not object to the portion of the R&R finding his sentence to be not proportional; therefore Petitioner argues that if this Court reaches this issue, it must accept the R&R's recommendation. (Doc. 36 at 6).  In their objections, Respondents argue that Petitioner's sentence is proportional.  (Doc. 35 at 16 (citing *Harmelin*, 501 U.S. at 1005)).  Thus, the Court finds Respondents also objected to the R&R's conclusion that Petitioner's sentence is not proportional.

> A criminal sentence that is not proportionate to the crime for which the defendant was convicted violates the Eighth Amendment. *Solem v. Helm*, 463 U.S. 277, 303 (1983). "[O]utside the context of capital punishment" however, "successful challenges to the proportionality of particular sentences will be exceedingly rare." *Id.* at 289-90. "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Ewing v. California*, 538 U.S. 11, 23 (2003).
>
> **A challenge to the proportionality of a sentence is analyzed using objective criteria, including: (1) the gravity of the offense and harshness of the penalty; (2) a comparison of sentences imposed on other criminals in the same jurisdiction; and (3) a comparison of sentences imposed for the same crime in other jurisdictions. *Solem*, 463 U.S. at 290-92.** Where, however, it cannot be said as a threshold matter that the crime committed and the sentence imposed are grossly disproportionate, it is not appropriate for the court to engage in a comparative analysis of the sentence received by the defendant and the sentences received by other defendants in other cases. *See United States v. Harris*, 154 F.3d 1082, 1084 (9th Cir. 1998).

*Vines v. Kane*, No. C 05-5316JSW(PR), 2009 WL 331435, at *9 (N.D. Cal. Feb. 11, 2009) (alteration in original) (emphasis added).  Accordingly, the Court will consider each of the three factors of the *Solem* test.

### a. The Gravity of the Offense and the Harshness of the Penalty

In *Solem*, the Supreme Court gave examples of facts this Court might consider in evaluating the gravity of the offense and the harshness of the penalty.  *Solem*, 463 U.S. at 294 ("This list is by no means exhaustive.").  Those included the harm caused or threatened to the victim or society, whether the crime was violent, non-violent or threatened violence, the magnitude of the crime (discussed in terms of either economic harm or violence level), the intent of the defendant, the culpability of the defendant, whether the crime was an attempt or a completed crime, whether the defendant was an accessory after the fact or the principle in committing the crime, and the motive of the defendant.  *Id.* at 292-94.

In discussing the gravity of the offenses, the R&R noted eight facts that presumably the R&R credited as supporting a conclusion that Petitioner's offenses were not particularly grave.  For example, the R&R noted that the offenses were non-violent, and that although some of the victims were over 65, Petitioner did not appear to target the elderly specifically,

and that the total restitution ordered was only approximately $5,000.  (Doc. 32 at 21).[13] This Court generally agrees that these facts weigh against finding the offenses particularly grave.

However, even though the offenses were non-violent, it is important to note that they were not victimless crimes.  For example, one of Petitioner's victims testified that Petitioner "kept coming back and trying the keys on the door.  He kept coming back to my house and stalking me.  I could not sleep at night."  (Doc. 35 at 2).  Another victim stated, "Every crack, every time the wind blows my children think somebody's breaking into our house.  It goes on three or four times a week.  We're just now trying to establish confidence that they can still relax and sleep at night."  (*Id.* (alterations omitted)).  This emotional impact on the victims weighs in favor of finding at least the 14 residential burglary crimes to be of significant gravity.

The R&R further notes that Petitioner committed these 25 felonies in approximately two months.  (Doc. 32 at 21).  When *Solem* established the gravity of the offense and the harshness of the penalty as an objective factor in deciding proportionality, the Court was not considering multiple offenses.  *Solem v. Helm*, 463 U.S. at 281-82, 292 (Helm was charged with one felony of passing a no account check and being a repeat offender).  Thus, it is difficult to fit this fact (the speed at which Petitioner commits crimes) into the objective factors. The R&R appears to consider the fact that it was a brief period of time to weigh in favor of the offenses being of lower gravity.  However, committing 25 felonies in only two months evidences significant felonious activity, which indicates a higher gravity. Ultimately, however, the Court finds this fact does not fit into the framework of *Solem* either way because *Solem* did not address multiple offenses.

The R&R also states that Petitioner typically stole random things that he mostly gave away to his friends.  (Doc. 32 at 21 ("[Petitioner's] offenses could best be described as impulsive intrusions . . . , during which Petitioner stole random objects that were in plain

---

[13]   The R&R also mentions Petitioner's age and that Petitioner confessed.  (Doc. 32 at 21). The Court does not find these facts weigh one way or the other under *Solem*.  Notably, Petitioner was not a juvenile at the time of these offenses.

1   sight . . . .")).  However, the state trial judge made the opposite factual finding on this issue.

2   Specifically, the state trial judge found:

3           It appears to me—and I'm thinking about the video, the surveillance
        video of you.  It's clear to me that these are pretty well thought-out
4       premeditated crimes.  You had a backpack with you.  You had a flashlight
        with you.  You had your face covered, realizing there may be surveillance
5       cameras; you didn't want to be detected.  And watching you go through
        peoples' property with your flashlight, you're very goal-oriented that you are
6       clearly looking for the good[] stuff to steal, or very specific items of property
        to take.

7

8   (Doc. 9-2 at 70).

9           Consistent with 28 U.S.C. § 2254(e)(1), this Court will defer to the trial judge's

10  description of the facts because he had viewed the evidence, including the video.  The

11  Court finds this fact also weighs in favor of the crimes being of high gravity because at

12  least some were premediated for pecuniary gain.  (Doc. 9-2 at 79 (by way of example, as

13  to count 2, the jury found the statutory aggravator of "the defendant committed the offense

14  as consideration for the receipt or in the expectation of the receipt of anything of pecuniary

15  value")).

16          Thus, the Court finds that some of the facts noted by the R&R weigh in favor of

17  finding a high gravity to the offenses and some do not.

18          The Court further notes the Petitioner was not an accomplice for any of his offenses,

19  and only one of the 25 was an attempt.  These facts both weigh in favor of finding

20  Petitioner's offenses more grave under the *Solem* factors.

21          In considering the culpability of the defendant, the Supreme Court in *Solem* noted

22  that alcohol was contributing factor in all of Helm's crimes.  *Solem*, 463 U.S. at 280.  Here,

23  the state trial judge noted the opposite.  Specifically, the trial judge stated to Petitioner at

24  sentencing, "each of these crimes were clearly premediated.  In other words, you were not

25  under the influence of alcohol, under the influence of drugs."  (Doc. 9-2 at 70).  Further,

26  as to Petitioner's culpability, the trial judge noted that Petitioner showed no remorse for

27  his crimes.  (*Id.* at 70-71).  The trial court stated to Petitioner at sentencing,

28          [Y]ou have no empathy or sympathy for any of your victims . . . and I say

that because during the interview the detective asked you why do you pick certain homes to burglarize, and one of the things you said was I only go to houses and rob those houses or break-in those houses that—for people I don't know.  I don't want to ever rob someone I [] know.

And you indicated that later you found out that one of the homes that you victimized was somebody that you knew and you felt bad about it, and what struck me is you said that if I had to do it over again I wouldn't have victimized them.  You didn't say if I had to do it over again I wouldn't have victimized anybody.

. . . [T]he only person you seem to show any empathy towards is somebody that you knew, but apparently you still would have continued to burglarize and victimize other people because you didn't know them.

(*Id.*).  The fact that Petitioner was not under the influence of any substances and showed no remorse for his crimes (except for one victim) weigh in favor of finding Petitioner's sentence proportional because his high culpability justifies the harshness of the penalty.

As the R&R notes, "Petitioner is serving a 292 year sentence, essentially a life sentence without parole."  (Doc. 32 at 21).  The Court agrees with the R&R that this is a very harsh penalty.  Evaluating the harshness of the penalty against Petitioner's offenses brings to light the problem with Petitioner's overall proportionality argument: namely, he is effectively seeking to have his sentences considered as a **whole**, but his crimes considered **individually**, for purposes of a proportionality analysis.  For example, for any one burglary, even a residential one, the gravity of the offense would be unlikely to justify an "essentially" life sentence.  And Petitioner seems to look at the gravity of each offense in that vacuum: that standing alone any one offense is not of very high gravity and thus could not be proportional to his total sentence.  However, Petitioner did not receive his sentence for one burglary.  Thus, the Court also finds that the volume of the crimes committed weighs in favor of finding the gravity to be high.  In other words, if the Court is to consider the sentence **as a whole**, the Court should also consider the crimes **as a whole** rather than individually. Committing 25 felonies after having previously been in prison for committing three other felonies (two of which counted as historical priors) overall presents a high gravity of "offense" by sheer volume.

Accordingly, as to factor one, considering the impact to the victims emotionally, the culpability of Petitioner, the motive of Petitioner, Petitioner's role in the crimes, and the

impact to society due to the volume of crimes committed, the Court finds the gravity of the offenses to be proportional to the sentences when both are considered as a whole.

Thus, under *Harris*, 154 F.3d at 1084,[14] the Court finds Petitioner's sentence does not violate the Eighth Amendment regardless of a comparison of like crimes.  Nonetheless, the Court will consider the other *Solem* factors.

### b.     Other Arizona Sentences

The R&R concluded that Petitioner's sentence was not consistent with other like crimes in Arizona.  (Doc. 32 at 23-25 (relying on primarily *State v. Fillmore*, 927 P.2d 1303, 1314 (Ariz. 1996))).  In addressing whether Petitioner's sentence was proportional in their objections, Respondents only addressed the first and third factors of *Solem*; namely the gravity of the offenses and the harshness of the punishment and whether the sentence was consistent with other jurisdictions.  (Doc. 35 at 15-16); *see also* note 12 above.  Because Respondents did not raise an objection to this specific finding of the R&R, the Court accepts the R&R on this point; namely, that Petitioner's sentence is longer than other comparable sentences in Arizona.

However, as noted above with respect to ground 4, to the extent the R&R premised its findings regarding Arizona law on the amendment to A.R.S. § 13-711(A), the Court

---

[14] *Harris* states,

> Our court follows the narrow proportionality rule established by Justice Kennedy's concurrence in *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), a case without a majority position. *See Bland*, 961 F.2d at 128-29. Under this rule, the "Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin*, 501 U.S. at 1001, 111 S.Ct. 2680 (Kennedy, J., concurring) (quoting *Solem v. Helm*, 463 U.S. 277, 288, 303, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)). Comparative analyses of sentences for other crimes is only appropriate "in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.* at 1005, 111 S.Ct. 2680.

*Harris*, 154 F.3d at 1084.

1  rejects the R&R on this point because the amendment did not change the state of the law

2  in Arizona.  Thus, the statute under which Petitioner was previously sentenced, and the

3  statute today, are legally the same.

4  **c.**    **Other Jurisdictions**

5          The Court in *Solem* discussed the difficulty in assessing proportionality as it applies

6  to a repeat offender.  463 U.S. at 298 ("Helm's habitual offender status complicates our

7  analysis . . . .").   In *Solem*, the Court found a life sentence for one property crime to be

8  disproportional even though it was defendant's seventh felony.  463 U.S. at 304 (Burger,

9  C.J., dissenting).  However, the Court noted, "We must focus on the principal felony—the

10  felony that triggers the life sentence—since Helm already has paid the penalty for each of

11  his prior offenses. But we recognize, of course, that Helm's prior convictions are relevant

12  to the sentencing decision."  *Id.* at 296 n.21 (majority opinion).  Here, no one sentence of

13  Petitioner's 25 caused him to have an effective life sentence.  Indeed, Petitioner does not

14  argue that any one of his sentences, standing alone, is not proportional.

15          Conversely, the Court has found many cases finding various crimes, including

16  property crimes, that produced up to life sentences, that courts in other jurisdictions found

17  proportional.  Examples are as follows, with the emphasis added.

18          Reece's consecutive **ten-years-to-life sentence** imposed **as a deadly
19     weapon enhancement** falls short of implicating Eighth Amendment
       concerns.   *Reece v. Williams*, No. 220CV00960JADVCF, 2020 WL
20     3172994, at *3 (D. Nev. June 15, 2020) [] *See United States v. Parker*, 241
       F.3d 1114, 1117 (9th Cir. 2001) (holding that mandatory consecutive
21     sentences imposed by statute do not violate the Eighth Amendment and that,
       "as long as the sentence imposed on a defendant does not exceed statutory
22     limits, this court will not overturn it on Eighth Amendment grounds")); *see
       also Harmelin v. Michigan*, 501 U.S. 957, 994 (1991) ("Severe, mandatory
23     penalties may be cruel, but they are not unusual in the constitutional sense. .
       . .").

24  *Reece v. Williams*, No. 220CV00960JADVCF, 2020 WL 3172994, at *3 & n.23 (D. Nev.

25  June 15, 2020).

26          As the Supreme Court observed in *Andrade*, Eighth Amendment
       jurisprudence "gives legislatures broad discretion to fashion a sentence that
27     fits within the scope of the proportionality principle-the precise contours of
       which are unclear." *Andrade*, 538 U.S. at 76 (internal quotations and
28     citations omitted). Consistent with such deference, the Supreme Court, in
       each of those cases, upheld the application of California's "Three Strikes"

1
2
3
4

law to non-violent theft crimes. Andrade's final commitment offense, for example, was his **theft of videotapes** from two stores, the **total value of such merchandise being $150.** [*Andrade*,] 538 U.S. at 66. Because Andrade had a prior misdemeanor conviction, he was charged with two felony counts of petty theft. *Id.* at 67-68. After conviction, the trial court sentenced Andrade to **two consecutive terms of twenty-five years to life** under the Three Strikes law, a sentence the Supreme Court upheld as constitutional. *Id.* at 77.

5
6
7
8

If Andrade's sentence of fifty years for stealing videotapes passes constitutional muster, petitioner's sentence of **sixty-five years for residential burglary** cannot be said to be unconstitutional. Put another way, in light of such authority, petitioner has not established his sentence was grossly disproportionate to his crimes. Because petitioner has not made the threshold showing that his sentence is grossly disproportionate to his crimes, this Court's analysis is at an end. *See Harris*, 154 F.3d at 1084.

9
10
11
12
13
14
15
16
17
18
19

*Garcia v. Yates*, No. C 06-1958 MMC (PR), 2008 WL 5273715, at *6 (N.D. Cal. Dec. 19, 2008); *see also United States v. Walker*, 473 F.3d 71, 84 (3d Cir. 2007) ("Walker's mandatory consecutive sentences represent Congress's attempt to address the serious societal problem of the use of firearms in connection with violent crimes and in connection with drug trafficking.  We conclude, accordingly, that Walker's **55-year consecutive mandatory minimum sentence** for **three violations of Section 924(c)(1)** does not violate the Eighth Amendment's prohibition on cruel and unusual punishment." (citations omitted)); *Vines*, 2009 WL 331435, at *10 ("If Andrade's sentence of fifty years-to-life for the non-violent crime of stealing videotapes passes constitutional muster, Petitioner's sentence of **forty-seven years-to-life** for these violent offenses cannot be said to be unconstitutional.").

20
21
22
23
24
25
26
27

"[N]o circuit has held that consecutive sentences under § 924(c) violate the Eighth Amendment." *United States v. Robinson*, 617 F.3d 984, 991 (8th Cir. 2010) (alteration in original) (quoting *United States v. Wiest*, 596 F.3d 906, 912 (8th Cir. 2010)). For example, courts have upheld against Eighth Amendment challenges such sentences as a **107-year and 1-month sentence for a defendant's five § 924(c) convictions**, *United States v. McDonel*, 362 Fed. Appx. 523, 530 (6th Cir.), *cert. denied*, 562 U.S. 1061 (2010); **a 132-year and 1-day sentence, of which 125 years were for § 924(c) convictions**, *United States v. Ezell*, 265 Fed. Appx. 70, 72 (3d. Cir. 2008); **a 147-year and 8-month sentence based, in large part, on a defendant's six § 924(c) convictions**, *United States v. Watkins*, 509 F.3d 277, 282 (6th Cir. 2007); **and a 155-year sentence for seven § 924(c) convictions**, *United States v. Hungerford*, 465 F.3d 1113, 1117-18 (9th Cir. 2006), *cert. denied*, 550 U.S. 938 (2007). Rivera-Ruperto has not presented any contrary authority upon which we might base a departure from our sister circuits' holdings here [as to his **161 years and 10 months sentence**].

28

*United States v. Rivera-Ruperto*, 852 F.3d 1, 18 (1st Cir. 2017).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

This Court is not aware of any clearly established federal law that holds any such comparable sentence enhancement to be cruel and unusual punishment, and that alone is enough to preclude habeas relief. *See Carey v. Musladin*, 549 U.S. 70, 77 (2006) (in absence of controlling Supreme Court holding on issue, state court's decision could not have been contrary to or an unreasonable application of clearly established federal law). To the contrary, courts have upheld sentences that were comparable, and even more lengthy, in proportion to the underlying crimes, even where, as here, a consecutive enhancement was imposed and the petitioner had no prior criminal record. *Cf. Harmelin v. Michigan*, 501 U.S. at 961, 994-95 (rejecting Eighth Amendment claim where petitioner with no prior felony convictions was convicted of **possessing 672 grams of cocaine and received a life term without the possibility of parole**); *Rummel v. Estelle*, 445 U.S. at 284-85 (**life sentence** for petitioner convicted of **obtaining $120.75 by false pretenses**, where petitioner had prior convictions for fraudulent use of credit card and passing forged check, was not cruel and unusual punishment); *Plascencia v. Alameida*, 467 F.3d 1190, 1204 (9th Cir. 2006) (noting that Penal Code Section 12022.53(d) provides for 25-years-to-life enhancement; and rejecting claim that **25-years-to-life sentence for first degree murder** and **25-years-to-life enhancement for using a firearm** constitutes cruel and unusual punishment); *Eckert v. Tansy*, 936 F.2d 444, 448-49 (9th Cir. 1991) (rejecting Eighth Amendment claim where Petitioner was convicted of **first degree kidnaping with a deadly weapon and received two consecutive life sentences**); *Camero v. Salazar*, No. 1:05-cv-00034 ALA (HC), 2008 WL 4104247, at *11 (E.D. Cal. 2008) (upholding sentence of **15-years-to-life without possibility of parole** pursuant to California's "one strike" provision in Penal Code Section 667.71(b) for conviction on four counts of committing a **lewd act upon a child** under the age of fourteen) (citations omitted); *People v. Villegas*, 92 Cal.App.4th 1217, 1230-31, 113 Cal.Rptr.2d 1 (2001) (sentence of **life with possibility of parole** for crime of **attempted murder** with additional **consecutive 25-years-to-life sentence for gun enhancement** was not "grossly disproportionate" even though appellant had no significant prior criminal record where appellant was gang member); *Martinez*, 76 Cal.App.4th at 496-98, 90 Cal.Rptr.2d 517 (**25-years-to-life sentence for gun use enhancement** under Penal Code Section 12022.53(d) was not "grossly disproportionate" and therefore not cruel and unusual punishment, in spite of fact that the defendant had no "significant prior criminal record") (*citing* Eighth Amendment and *Harmelin*).

21
22
23

*Baltazar v. Yates*, No. EDCV04-00274-VBFCW, 2010 WL 2195979, at *7 (C.D. Cal. Apr. 28, 2010), *report and recommendation adopted*, No. EDCV04-274-VBF CW, 2010 WL 2195983 (C.D. Cal. June 1, 2010).

24
25
26
27
28

While the R&R has noted some cases where sentences in other jurisdictions were found to not be proportional, against the weight of the cases cited above, this Court finds that Petitioner's 292-year sentences for 25 separate felony crimes (aggravated by his historical priors for convictions prior to these 25 felonies) is consistent with sentences in other jurisdictions.

### d.   De Novo Review Conclusion

As discussed above, the Court has considered the three objective factors from *Solem*.  Under *Harris*, the fact that Petitioner's sentence is not grossly disproportional to his crimes means that even under a de novo review, Petitioner is not entitled to relief without consideration of the other factors.  *Harris*, 154 F.3d at 1084.

Nonetheless, even considering the three factors on balance, Petitioner's sentences are proportional.  First, having accepted the R&R as unobjected to, the Court finds that Petitioner's sentence is overly long compared to other sentences in this jurisdiction (Arizona) and this weighs in favor of finding his sentence disproportional.  Again, the Court finds that Petitioner's sentence, while harsh, is consistent with the gravity of his offenses and this factor weighs in favor of finding his sentence to be proportional.  Finally, the Court finds that Petitioner's sentence is consistent with sentences for other crimes, including non-violent crimes, in other jurisdictions and this factor weighs in favor of finding that his sentence is proportional.  Thus, even balancing the factors, the Court concludes that Petitioner's sentence is proportional under the Eighth Amendment under a de novo review.

Accordingly, relief is denied on the facts of Petitioner's case.  Respondent's objection on this point is sustained.

### V.   Conclusion

For the foregoing reasons, the Court finds that the decision of the Arizona Court of Appeals is entitled to AEDPA deference; and relief is denied because that decision was not contrary to or an unreasonable application of clearly established federal law nor was it an unreasonable determination of the facts.  Alternatively, the Court finds that even under de novo review, Petitioner's claim fails as a matter of law because a proportionality analysis is not applied to consecutive sentences as a whole, but only to each individual sentence; and none of Petitioner's individual sentences were disproportionate to his crime.  As an additional alternative, under de novo review, the Court finds Petitioner's claim fails as a matter of fact; even if this Court applies a proportionality analysis to his sentences as a

whole, the Court finds Petitioner's sentences as a whole are proportional to his crimes. Therefore,

**IT IS ORDERED** that the R&R (Doc. 32) is accepted, rejected, or modified as specified above.

**IT IS FURTHER ORDERED** that Respondent's objections (Doc. 35) are overruled or sustained as indicated above.

**IT IS FURTHER ORDERED** that the Petition is denied and dismissed with prejudice and the Clerk of the Court shall enter judgment accordingly.

**IT IS FINALLY ORDERED** that a certificate of appealability is granted as to Petitioner's claim that his sentences were not proportional to his crimes under the Eighth Amendment (merged grounds five and seven of the Petition (*see* Doc. 32 at 17)) because Petitioner has stated a claim of constitutional magnitude and jurists of reason could find this Court's assessment of the claim debatable.[15]  A certificate of appealability is denied in all other respects as to all other claims because jurists of reason would not find this Court's rulings debatable as to Petitioner's other claims.  *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

Dated this 18th day of August, 2020.

James A. Teilborg
Senior United States District Judge

[15]  As indicated on page one, implicit in the recommendation of the R&R that Petitioner be returned to state court for resentencing, is a requirement that Petitioner receive something less than his current 292-year sentences.  (Notably, Petitioner's sentences are almost 200 years less than the maximum he was facing.  (Doc. 9 at 4 (noting that Petitioner's maximum sentence was 490 years))).  The R&R does not go so far as to say Petitioner must receive something less than an "essentially life sentence."  However, the reality of this case, given the number of Petitioner's crimes, is that Petitioner would have to receive something less than 3 years per crime, or this Court would have to require that some of Petitioner's sentences be concurrent, for Petitioner to receive any sentence that was not an "essentially life sentence."  The Court is aware of no constitutional principle that requires a state court to sentence a repeat offender to less than three years per new offense or to concurrent sentences.  Thus, practically speaking, Petitioner's sentences could be reduced by two-thirds and he would still have an "essentially life sentence."  Because the Court has found Petitioner's sentence is proportional, the Court need not reach the next question of whether any resentencing that still results in an "essentially life sentence" would run afoul of the R&R's recommendation.